UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LEONARD J. DIFOGGI,

       Plaintiff,

v.

       File No.  2:07-CV-73

       HON. ROBERT HOLMES BELL

DARRELL HARP, et al.,

       Defendants.
_____/

## **O P I N I O N**

This matter is before the Court on Defendants Officer Darrell Harp, Officer John Weist, and Sergeant Melvin Sparks's[1] motion for summary judgment. (Dkt. No. 24.) Plaintiff Leonard J. DiFoggi filed this action against Defendants alleging various

---

[1] Plaintiff's original complaint, which was filed on April 16, 2007, named Officer Darrell Harp, Officer John Weist, and Officer Ivan Hartman as defendants. (Dkt. No. 1, Compl.) On December 13, 2007, a motion for summary judgment was filed on behalf of Officer Harp, Officer Weist, and Sergeant Melvin Sparks. On March 13, 2008, the parties filed a stipulation to amend the complaint to dismiss Officer Hartman and to add Sergeant Sparks. (Dkt. No. 35, Stipulation to Am. Compl.) The parties had signed the stipulation on November 1, 2007, but had not filed it at that time. The Court granted Plaintiff leave to amend the complaint on March 17, 2008, but the Court noted that the substitution of parties would not be effective until an amended complaint was filed. (Dkt. No. 36, 03/17/2008 Order.) Plaintiff filed an amended complaint on March 17, 2008, and Defendants Officer Harp, Officer Weist, and Sergeant Sparks filed an answer to the amended complaint on March 27, 2008. Although Sergeant Sparks was not a party at the time the motion for summary judgment was filed, the parties briefed the summary judgment motion as if Sergeant Sparks was a party at the time the motion for summary judgment was filed. Therefore, the Court will treat the motion for summary judgment as made on behalf of Officer Harp, Officer Weist, and Sergeant Sparks.

constitutional violations under 42 U.S.C. §§ 1983, 1988 and state-law battery. On March 25, 2008, the Court held a hearing on Defendants' motion. For the reasons that follow, Defendants' motion is granted in part and denied in part.

**I. Background**

Plaintiff is resident of Sault Sainte Marie, Michigan. Defendants are police officers for the City of Sault Sainte Marie, Michigan. Plaintiff brought this lawsuit against Defendants in their individual and official capacities.

On March 17, 2006, shortly after 2:30 a.m. Plaintiff was walking along Portage Street in Sault Sainte Marie, Michigan. Officer Harp observed Plaintiff walking approximately fifteen feet behind a woman. Based on his observations, Officer Harp believed that Plaintiff and the woman were arguing. Officer Harp observed the woman make a gesture that appeared to indicate that she wanted Plaintiff to go in a different direction. The officers later learned that the woman was Plaintiff's girlfriend, Laura Hoffman. Officer Harp ordered Plaintiff to stop and he began questioning Plaintiff. Officer Harp was joined shortly by Officer Weist. A video camera in Officer Weist's patrol car recorded the incident from this point forward and a copy of the videotape was provided to the Court as part of this summary judgment motion. (Dkt. No. 32, Notice of Filing.) Officer Harp asked dispatch to run a LEIN check on Plaintiff using his name and date of birth. During this questioning by Officers Harp and Weist, Plaintiff was permitted to put his hands in and out of his pockets and to smoke a cigarette.

The LEIN check indicated that Plaintiff had an expired concealed weapons permit ("CWP"). Dispatch also advised Officer Harp that Plaintiff had given an incorrect date of birth. As evidenced by the videotape and acknowledged by Defendants, Plaintiff actually gave the correct date of birth, but Officer Harp did not repeat it correctly to dispatch. (Dkt. No. 25, Defs.' Br. in Supp. 4.) After dispatch indicated that Plaintiff had an expired CWP, the following exchange took place:

> Officer: You don't have a gun with you do you Leonard?
> Plaintiff: No, sir.
> Officer: Did you have a CCW at one point?
> Plaintiff: Yes, I was at the locks for three years.
> Officer: What do you have in your pocket?
> Plaintiff: Oh, I got some brandy.
> Officer: Is it open?
> Plaintiff: No.
> Officer: What are you doing?[2]

One of the officers then noticed something in Plaintiff's right-front pant pocket. Officer Harp touched the outside of the pocket and determined that the object was hard. Officer Harp then reached for Plaintiff's pocket. Plaintiff can be seen on the videotape making contact with Officer Harp's hand or wrist as Officer Harp reached for Plaintiff's pocket. The "What are you doing?" comment was made as this happened.

In response to Plaintiff's movement, Officer Harp took Plaintiff to the ground.

---

[2] This is based on the Court's review of the videotape and the transcript of the videotape that was filed by Plaintiff. (Dkt. No. 30, Pl.'s Br. in Resp., Ex. B, Videotape Tr.) Defendants have not disputed the accuracy of this portion of videotape transcript. (Defs.' Br. in Supp. 3 (describing the transcript as "word-for-word"). *Cf.* Dkt. No. 41, Defs.' Notice of Filing Additional Ex. (indicating that the transcript is incorrect as to what was said about forty-five seconds after the above exchange).)

Officer Weist promptly joined Officer Harp on the ground. About twenty seconds after Officer Harp took Plaintiff to the ground Sergeant Sparks joined Officers Harp and Weist on the ground. Sergeant Sparks walked in front of Officer Weist's patrol car and approached from where Plaintiff's legs would have been.

Sergeant Sparks then struck Plaintiff with his knee. Defendants admit that Sergeant Sparks used what was intended to be a peroneal knee strike in an effort to temporarily block Plaintiff's motor control. (Defs.' Br. in Supp. 5-6, 19.) A peroneal knee strike involves the officer using his knee to apply force to the outside of the individual's thigh. The parties dispute where on Plaintiff's body the knee strike was actually applied. Because the events on the ground took place immediately in front of Officer Weist's patrol car the videotape only shows the kneeling officers from the shoulders up and does not show Plaintiff after Officer Harp took him to the ground.

Plaintiff was arrested for possessing an open intoxicant on a public street and for resisting and obstructing an officer. Plaintiff was taken to the Chippewa County Sheriff's Department. The booking officer observed a small cut on Plaintiff's left wrist, a small cut on Plaintiff's right pinky, and a small cut on Plaintiff's forehead.

In 91st District Court Plaintiff filed a motion to suppress the evidence based on the stop and search having violated his Fourth Amendment rights. Judge Michael McDonald of the 91st District Court denied the motion, finding that the officers had reasonable suspicion of criminal activity to stop Plaintiff. Judge McDonald also found that it was

permissible for Officer Harp to touch Plaintiff to identify the object in his right-front pocket and to later reach into Plaintiff's pocket to remove the object. The prosecuting attorney dismissed the resisting and obstructing charge. Plaintiff then pleaded guilty to the open intoxicants in a public street charge.[3] (Defs.' Notice of Filing Additional Ex., Ex. I, 91st Judicial Dist. J. of Sentence.)

Plaintiff filed this lawsuit on April 15, 2007. Plaintiff's complaint contains two counts. Count I asserts a cause of action under 42 U.S.C. §§ 1983, 1988 for violations of Plaintiff's rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments. Count II assets a cause of action for state-law battery. In his constitutional claim, Plaintiff asserts that Defendants violated his rights by stopping him, searching him, arresting him, and using excessive force to arrest him. Plaintiff alleges that as a result of the excessive force he sustained a herniated disk; a thoracic sprain, with associated myofascitis; contusions and abrasions to the ribs, back, and torso; and pain and suffering.

## II. Summary Judgment Standard[4]

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is

---

[3] In the briefing on this motion the parties indicated that Plaintiff had pleaded no contest; however, subsequent to the hearing on this motion Defendants filed a certified copy of the Judgment of Sentence from the 91st Judicial District Court which shows that Plaintiff actually pleaded guilty to the charge of open intoxicants in a public street.

[4] Defendants brought their motion as both a motion to dismiss for failure to state a claim upon which relief can be granted and a motion for summary judgment. Because Defendants' motion has presented matters outside the pleadings the Court has treated the motion as a motion for summary judgment. Fed. R. Civ. P. 12(d).

proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  In evaluating a motion for summary judgment the court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  If the defendants carry their burden of showing there is an absence of evidence to support a claim, then the plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file that there is a genuine issue of material fact for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986).

In considering a motion for summary judgment, the court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party.  *Minges Creek, L.L.C. v. Royal Ins. Co. of Am.*, 442 F.3d 953, 955-56 (6th Cir. 2006) (citing *Matsushita*, 475 U.S. at 587).  Nevertheless, the mere existence of a scintilla of evidence in support of the plaintiff's position is not sufficient to create a genuine issue of material fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for the plaintiff.  *Id.*; *see generally*, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476-80 (6th Cir. 1989).  On a motion for summary judgment in which the disputed events were videotaped, if the opposing parties tell two different stories, one of which is blatantly contradicted by a videotape of the relevant events, "so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 127

S. Ct. 1769, 1776 (2007). *Accord Marvin v. City of Taylor,* 509 F.3d 234, 239 (6th Cir. 2007).

### III. Analysis

**A.     Plaintiff's Fifth and Sixth Amendment Claims**

Defendants contend that despite the references to the Fifth and Sixth Amendment in Plaintiff's complaint, Plaintiff does not actually assert a claim based on his Fifth or Sixth Amendment rights because the Fifth and Sixth Amendment do not determine the lawfulness of a stop, search, or arrest. Plaintiff's response acknowledges that the complaint references the Fifth and Sixth Amendments, but indicates that Plaintiff is not relying on the Fifth or Sixth Amendment. (Pl.'s Br. in Resp. 6.) As Plaintiff is no longer relying on the Fifth or Sixth Amendment, Defendants are entitled to summary judgment on Plaintiff's Fifth and Sixth Amendment claims.

**B.     Plaintiff's Fourth Amendment Stop, Search, and Arrest Claims**

Plaintiff contends that the stop, search, and arrest by Defendants violated his constitutional rights. Defendants contend that *Heck v. Humphrey*, 512 U.S. 477 (1994), bars Plaintiff's claims as to the stop, search, and arrest.

In *Heck*, the Supreme Court held that § 1983 plaintiffs are barred from advancing claims that, if successful, "would necessarily imply the invalidity" of a prior conviction or sentence. 512 U.S. at 487. If, however, "the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the

7

action should be allowed to proceed, in the absence of some other bar to the suit." *Id.* Additionally, if a plaintiff's claim that he was unlawfully searched would necessarily imply the invalidity of his conviction or sentence then *Heck* bars the plaintiff's claim. *Schilling v. White*, 58 F.3d 1081, 1085-86 (6th Cir. 1995); *Fox v. Mich. State Police Dep't*, 173 F. App'x. 372, 377-78 (6th Cir. 2006).

In the underlying state court criminal case Plaintiff filed a motion to suppress in which he argued that the stop and search were illegal. Judge McDonald of the 91st District Court denied the motion. (Defs.' Br. in Supp., Ex. C, 05/09/2006 Hr'g Tr. 35:16-17.) Judge McDonald found that Officer Harp's initial stop of Plaintiff was a lawful investigatory stop. (*Id.* at 29:18-30:6.) Judge McDonald further concluded that Officer Harp lawfully conducted a *Terry* pat-down search (i.e., touching the outside of Plaintiff's right-front pant pocket). (*Id.* at 31:7-32:15.) Lastly, Judge McDonald concluded that the officers could lawfully search Plaintiff after Officer Harp determined that Plaintiff had a hard object in his right-front pocket. (*Id.* at 32:16-35:15.) The open intoxicants in a public street charge to which Plaintiff pleaded guilty was based on the bottle of brandy that the officers found as a result of the search. The initial stop and the *Terry* pat-down were necessary predicates to the search that discovered the bottle of brandy. If Plaintiff were to prevail on his claims that the stop or search violated his Fourth Amendment rights it would necessarily imply the invalidity of Plaintiff's state court sentence. *Schilling*, 58 F.3d at 1085-86; *Fox*, 173 F. App'x. at 377-78.

As to the arrest, if Plaintiff prevailed on his claim that the arrest violated his Fourth Amendment rights it would imply that Plaintiff's state court sentence was invalid. Both the arrest and the state court sentence are based on Plaintiff's possession of an open intoxicant on a public street. Therefore, Plaintiff's claim that the arrest violated his Fourth Amendment rights is barred by *Heck* because if Plaintiff prevailed it would necessarily imply the invalidity of his state court sentence. *Schreiber v. Moe*, 445 F. Supp. 2d 799, 812 (W.D. Mich. 2006).

Plaintiff contends that *Heck* is inapplicable because the resisting and obstructing charge was dismissed. Plaintiff contends that if he prevails on his claims that the stop, search, and arrest violated his Fourth Amendment rights, it would imply the invalidity of a conviction for resisting and obstructing, but not the invalidity of his sentence for open intoxicants in a public street. As the Court's previous analysis explained, if Plaintiff prevails on his claims that the stop, search, and arrest violated his Fourth Amendment rights it would necessarily imply the invalidity of his sentence for open intoxicants in a public street. Thus, Plaintiff's contention that *Heck* would only apply if he had been convicted of resisting and obstructing is incorrect.

As the Court has concluded that Plaintiff's claims that the stop, search, and arrest violated his Fourth Amendment rights are barred by *Heck*, the Court need not consider whether these claims are also barred by claim or issue preclusion.

**C.     Plaintiff's Fourth Amendment Excessive Force Claim**

Plaintiff alleges that the officers used excessive force.  Defendants contend that the use of force was objectively reasonable, and if not objectively reasonable that they are entitled to qualified immunity.

Neither Plaintiff nor Defendants have provided testimony from any non-party use of force experts or identified police training manuals that address the techniques used by Defendants.  However, Officer Harp is a certified pressure point control tactics instructor.  (Defs.' Br. in Supp., Ex. B, Harp Dep. 10:23-11:10.)  In addition to carefully reviewing the exhibits attached to the parties' briefs, the Court has carefully reviewed the videotape from Officer Weist's patrol car innumerable times, both before and after the hearing on this motion.

"Title 42, section 1983 of the United States Code imposes civil liability on those individuals who, acting under color of state law, deprive a citizen of, among other things, his or her federally guaranteed constitutional rights." *Williams v. City of Grosse Pointe Park*, 496 F.3d 482, 485 (6th Cir. 2007).  In a § 1983 action in which a defendant asserts qualified immunity, as Defendants have done in the instant case, the court must follow a two-step process in evaluating the defendant's claim of immunity.  *Scott*, 127 S. Ct. at 1774.

> Under this analytical framework, a court must first determine whether the facts, viewed in the light most favorable to the plaintiff, could support a finding that the defendant has violated the plaintiff's constitutional rights. [*Saucier v. Katz*, 533 U.S. 194, 201 (2001).]  If the facts would support a finding of a constitutional violation, the court must also find that the conduct of the defendant violated "clearly established" constitutional rights.  *Id.*  If,

>however, the plaintiff is unable to establish sufficient facts to support a finding of a constitutional violation by the defendant, the inquiry ceases, and the court must award judgment to the defendant. *See id.*

*Williams*, 496 F.3d at 485.

### 1. *Objective Reasonableness of the Use of Force*

"A claim of 'excessive force in the course of making an arrest . . . [is] properly analyzed under the Fourth Amendment's "objective reasonableness" standard.'" *Marvin*, 509 F.3d at 244 (modification in *Marvin*) (quoting *Graham v. Connor*, 490 U.S. 386, 388 (1989)). "In determining the reasonableness of the manner in which a seizure is effected, '[w]e must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'" *Scott*, 127 S. Ct. at 1778 (modification in *Scott*) (quoting *United States v. Place*, 462 U.S. 696, 703 (1983)). The "reasonableness" of a particular use of force "'must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Williams*, 496 F.3d at 486 (quoting *Graham*, 490 U.S. at 396). "The 'proper application [of the Fourth Amendment's objective reasonableness test] requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Marvin*, 509 F.3d at 245 (modification in *Marvin*) (quoting *Graham*, 490 U.S. at 396). In addition, "'the definition of reasonable force is partially dependent on the

11

demeanor of the suspect.'" *Id.* (quoting *Solomon v. Auburn Hills Police Dep't*, 389 F.3d 167, 174 (6th Cir. 2004)).

Although Plaintiff had given his correct date of birth, Officer Harp believed that Plaintiff had given an incorrect date of birth based on Officer Harp's communication with dispatch. Defendants contend that Plaintiff's expired CWP reasonably suggested that the bulge in his right-front pant pocket might be a gun. Prior to the reach for Plaintiff's pocket that resulted in Plaintiff being taken to the ground, Officer Harp felt the outside of Plaintiff's pocket and determined that the object in Plaintiff's pocket was hard. Officer Harp then reached for the object in Plaintiff's pocket and Plaintiff's hand made contact with Officer Harp's hand or wrist. Officer Harp then responded by taking Plaintiff to the ground. After that point there are genuine issues of material fact as to what took place. Based on the affidavit, depositions, transcript of the videotape, and transcript of the state court hearing a reasonable jury could return a verdict for the Plaintiff. Those materials leave unresolved genuine issues of material fact as to Plaintiff's actions and the officers' responses after Officer Harp took Plaintiff to the ground. The videotape does not resolve these genuine issues of fact because after Plaintiff was taken to the ground, Plaintiff cannot be seen and Defendants can only be seen from the shoulders up. The videotape does, however, show that Sergeant Sparks applied a knee strike. The depositions offer conflicting accounts of what happened after Officer Harp took Plaintiff to the ground and the audio on the videotape could support either account, especially in the context of Plaintiff's cooperative demeanor

before he was taken to the ground. Therefore, there are genuine issues of material fact as to whether Defendants' use of force was objectively reasonable.

   *2.   Qualified Immunity*

"Government officials in civil cases are protected from liability if their conduct does not 'violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Neague v. Cynkar*, 258 F.3d 504, 507 (6th Cir. 2001) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "It is well-established that individuals have a constitutional right to be free from excessive force during an arrest." *Baker v. City of Hamilton*, 471 F.3d 601, 606 (6th Cir. 2006) (citing *Graham*, 490 U.S. at 388, and *Solomon*, 389 F.3d at 173). However, "it is not enough that a plaintiff establishes that the defendant's use of force was excessive under the Fourth Amendment; to defeat qualified immunity, the plaintiff must show that the defendant had notice that the manner in which the force was used had been previously proscribed . . . ." *Id.* (citing *Brosseau v. Haugen*, 543 U.S. 194, 198-99 (2004) (per curiam)). In inquiring whether a constitutional right is clearly established, a court must look first to decisions of the Supreme Court, then to decisions of the Sixth Circuit and other courts within the Sixth Circuit, including decisions of the Michigan Supreme Court, and finally to decisions of other circuits. *Id.*; *Neague*, 258 F.3d at 507.

The facts, when viewed in the light most favorable to Plaintiff, suggest that after Plaintiff was taken to the ground he complied with the officers' requests and did not

13

otherwise resist. In that context Defendants had notice that the force alleged to have been used by the officers was previously prescribed. Thus, viewing the facts in the light most favorable to Plaintiff, Defendants' conduct violated "clearly established" constitutional rights.

**F.     Plaintiff's State-Law Battery Claim**

Defendants contend that under Michigan law they are entitled to governmental immunity from Plaintiff's battery claim under section 7 of Michigan's governmental immunity act, MCL § 691.1407. Battery is an intentional tort under Michigan law. *VanVorous v. Burmeister*, 262 Mich. App. 467, 483, 687 N.W.2d 132 (2004). Section 7 of Michigan's governmental immunity act does not shield individual employees who commit intentional torts. *Frohriep v. Flanagan*, 480 Mich. 962, 962, 741 N.W.2d 516 (2007); *Sudul v. Hamtramck*, 221 Mich. App. 455, 458, 562 N.W.2d 478 (1997). Defendants direct the Court to *Smith v. Department of Public Health*, 428 Mich. 540, 544, 410 N.W.2d 749 (1987), *aff'd sub nom Will v. Michigan Department of State Police*, 491 U.S. 58 (1989), for the proposition that governmental immunity applies to individuals who commit intentional torts. However, the language in *Smith* addressing the application of governmental immunity for intentional torts was directed at the immunity of government entities, not individuals. *Burns v. Malak*, 897 F. Supp. 985, 987 (E.D. Mich. 1995); *Sudul*, 221 Mich. App. at 481-88 (Murphy, J., concurring in part and dissenting in part) (explaining the scope of *Smith*). Therefore, Defendants are not entitled to governmental immunity from Plaintiff's state-law battery claim.

## IV. Conclusion

For the foregoing reasons, Defendants' motion for summary judgment is granted as to the Fifth Amendment claim, Sixth Amendment claim, and lawfulness of the stop, search, and arrest. Defendants' motion for summary judgment is denied as to Plaintiff's excessive force claim, qualified immunity, and state-law battery claim. An order will be entered consistent with this opinion.


Date:    April 22, 2008            /s/ Robert Holmes Bell
                                   ROBERT HOLMES BELL
                                   CHIEF UNITED STATES DISTRICT JUDGE